———————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————————————————

### Nos.  14-1019
### 14-1196
### 15-1125

———————————————————————

## UNITED STATES OF AMERICA
### Appellee
### v.
## JOSEPH CARAMADRE
### Defendant-Appellant

———————————————————————

## PETITION FOR REHEARING
## AND FOR
## REHEARING EN BANC

———————————————————————

**Randy Olen, Esq.**
**478A Broadway**
**Providence, RI 02909**
**(401) 274-1400**
**(401) 274-2480 (fax)**


**Of Counsel:**
**Alan M. Dershowitz, Esq.**

**Robert F. Weber, Esq.**
**478A Broadway**
**Providence, RI 02909**
**(401) 274-1400**
**(401) 274-2480 (fax)**


**Date: January 4, 2016**

# <u>**TABLE OF CONTENTS**</u>

Table of Authorities ........................................................................ iii

Background ..................................................................................... 1

ARGUMENT .................................................................................. 4

I.     THE PANEL DECISION HOLDING THE RULE 11 HEARING CONSTITUTIONALLY ADEQUATE IS ERRONEOUS AND IN CONFLICT WITH THIS COURT'S PRECEDENT DECISION IN <u>UNITED STATES V. PARRA-IBANEZ</u>...........................................4

II.    THE PANEL DECISION ERRED IN RATIFYING FORMER COUNSEL'S DECISION TO ALLOW MR. CARAMADRE TO PLEAD WITHOUT INFORMING THE COURT OF HIS INSISTENCE THAT HE WOULD BE LYING TO THE COURT .12

III.   THE DISTRICT COURT ENGAGED IN VINDICTIVE SENTENCING........................................................... 14

IV.   THE PANEL DECISION MISCONTRUES THE RULE 10(c) ARGUMENT.................................................................. 17

V.    MR. CARAMADRE'S CLAIM THAT THE DISTRICT COURT ERRED IN ORDERING RESTITUTION IN THE AMOUNT OF $46,000,000 IS NOT BARRED BY THE APPEAL WAIVER ........ 19

Conclusion ................................................................................. 20

Certification .............................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

## <u>*Cases*</u>

<u>Miranda-Gonzalez v. United States</u>, 181 F.3d 164 (1st Cir. 1999) .............. 12

<u>United States v. Belle</u>, 1997 U.S. App. LEXIS 1513 (1st Cir. 1997)...... 10, 11

<u>United States v. Caramadre</u>, 957 F.Supp. 2d 160 (D.R.I. 2013) .... 2, 8, 13, 15

<u>United States v. Caramadre</u>, 2013 U.S. Dist. LEXIS 184579
(D.R.I. November 6, 2013) ........................................................................ 3

<u>United States v. Caramadre</u>, 2013 U.S. Dist. LEXIS 184578
(D.R.I. November 26, 2013) ...................................................................... 3

<u>United State v. Caramadre</u>, 2014 U.S. Dist. LEXIS 12616
(D.R.I. January 31, 2014)............................................................................ 3

<u>United States v. Caramadre</u>, U.S. App. LEXIS 21175 (1st Cir. 2015) .. passim

<u>United States v. Cole</u>, 813 F.2d 43 (3rd Cir. 1987) ........................................ 5

<u>United States v. Hardimon</u>, 700 F.3d 940 (7th Cir. 2012)........................ 9, 10

<u>United States v. Kenney</u>, 756 F.3d 36 (1st Cir. 2014)................................ 7, 8

<u>United States v. Okoye</u>, 731 F.3d 46 (1st Cir. 2013).............................. 19, 20

<u>United States v. Parra-Ibanez</u>, 936 F.2d 588 (1st Cir. 1991)......... 1, 4, 5, 8, 10

<u>United States v. Salas-Fernandez</u>, 620 F.3d 45 (1st Cir. 2010).................... 19

<u>United States v. Sanchez-Maldonado</u>, 737 F.3d 826 (1st Cir. 2013) .. 2, 19, 20

<u>United States v. Savinon-Acosta</u>, 232 F.3d 265 (1st Cir. 2000)................. 5, 6

## <u>*Other Authorities*</u>

18 U.S.C. § 371 ............................................................................................ 2

18 U.S.C. § 1341 .......................................................................................... 2

Federal Rule of Appellate Procedure 10 (c) .............................. 1, 3, 4, 17, 18

Federal Rule of Appellate Procedure 35 (b)(1)(A)....................................... 1

Federal Rule of Appellate Procedure 35 (b)(1)(B)....................................... 1

## <u>STATEMENT OF COUNSEL</u>

Appellant, Joseph Caramadre, hereby submits a Petition for Rehearing and for Rehearing *En Banc*.

We express a belief, based on a reasoned and studied professional judgment, that rehearing *en banc* is warranted in this case, as contemplated by Federal Rule of Appellate Procedure 35 (b)(1)(A), in that the panel decision conflicts with the decision in <u>United States v. Parra-Ibanez</u>, 936 F.2d 588 (1ˢᵗ Cir. 1991). Furthermore, the panel decision raises a number of questions of exceptional importance, as contemplated by Federal Rule of Appellate Procedure 35 (b)(1)(B), including: whether a district court may sanction a guilty plea where the defendant has informed his counsel that he will be lying to the court when admitting guilt, and his counsel do not bring this fact to the attention of the court; whether a district court may ignore unchallenged, indisputably accurate statements made by the district court in an unrecorded, untranscribed chambers conference in the reconstruction of the record pursuant to Federal Rule of Appellate Procedure 10 (c), where the statements indicate bias and prejudgment of a motion to withdraw a guilty plea; whether a district court may increase a defendant's sentence based specifically on its speculation that a defendant contrived a plea withdrawal motion in advance in an alleged "cynical" attempt to manipulate the criminal justice system, where at oral argument the Judge who authored the panel decision

1

specifically stated that no evidence of such a "plan" existed in the record; and whether the panel decision improperly overlooked its precedential opinion in United States v. Sanchez-Maldonado, 737 F.3d 826 (1st Cir. 2013), in determining that the appeal waiver applied to a restitution order in this case.

For these reasons, we believe that this Court should grant the petition for rehearing *en banc*.

/s/ Randy Olen                                    /s/ Robert Weber

_____          _____

Randy Olen, Esq.                               Robert F. Weber, Esq.

## **BACKGROUND**

Defendant/Appellant, Joseph Caramadre, was charged in a 66 Count indictment returned by a Federal Grand Jury for the District of Rhode Island on November 17, 2011. Just over a year later, on November 19, 2012, after four days of trial, Mr. Caramadre pleaded guilty to counts nine (wire fraud, in violation of 18 U.S.C. § 1341) and 33 (conspiracy to commit offenses against the United States, in violation of 18 U.S.C. 371) of the indictment, entering into a plea agreement which capped his potential sentence at ten years imprisonment.

On February 28, 2014, Mr. Caramadre filed a pre-sentence motion to withdraw his guilty plea. After four days of hearings, the district court denied the motion from the bench on May 20, 2013. A published opinion followed on August 1, 2013. See United States v. Caramadre, 957 F.Supp. 2d 160 (D.R.I. 2013). A

2

restitution hearing was held in October of 2013. A magistrate judge's report and recommendation regarding restitution issued on November 6, 2013, and a supplemental report and recommendation issued on November 26, 2013. See United States v. Caramadre, 2013 U.S. Dist. LEXIS 184579 (D.R.I. November 6, 2013); United States v. Caramadre, 2013 U.S. Dist. LEXIS 184578 (D.R.I. November 26, 2013). The district court adopted the report and recommendation in an opinion and order dated January 31, 2014. See United State v. Caramadre, 2014 U.S. Dist. LEXIS 12616 (D.R.I. January 31, 2014). Timely notices of appeal were filed, and Case Nos. 14-1019 and 14-1196 were subsequently consolidated by this Court.

Mr. Caramadre tendered his opening brief in case 14-1019/14-1196 on September 8, 2014. The brief referenced statements made by the district court in an unrecorded and untranscribed chambers conference which took place on January 15, 2013. On October 7, 2014, this Court granted the Government's motion to strike Mr. Caramadre's opening brief, and ordered Mr. Caramadre to file a brief "devoid of any reference to material not in the district court record." See October 7, 2014 Order of Court. On October 21, 2014, Mr. Caramadre tendered an opening brief in compliance with this Court's order.

Thereafter, Mr. Caramadre filed a motion in the United States District Court for the District of Rhode Island pursuant to Federal Rule of Appellate Procedure 10

3

(c) for a statement of the evidence presented at the January 15, 2013 chambers conference. On January 5, 2015, the district court issued an order declining to approve Mr. Caramadre' proposed statement, but instead issuing its own statement as to what transpired at the January 15, 2013 chambers conference. A timely notice of appeal was filed as to that order. Mr. Caramadre filed his opening brief in Case No. 15-1125 on March 13, 2015. After briefing, Case No. 15-1125 was consolidated with Case Nos. 14-1019 and 14-1196.

On December 7, 2015, this Court issued a decision denying Mr. Caramadre's consolidated appeals. See United States v. Caramadre, U.S. App. LEXIS 21175 (1st Cir. 2015). This petition for rehearing and for rehearing *en banc* follows.

## **ARGUMENT**

### I. **THE PANEL DECISION HOLDING THE RULE 11 HEARING CONSTITUTIONALLY ADEQUATE IS ERRONEOUS AND IN CONFLICT WITH THIS COURT'S PRECEDENT DECISION IN UNITED STATES V. PARRA-IBANEZ**

In United States v. Parra-Ibanez, 936 F.2d 588 (1st Cir. 1991), this Court held that the district court's guilty plea colloquy fell short of Rule 11 standards by failing to explore questions raised by the defendant's acknowledged use of prescription medications. The Court was assured by both Government and defense counsel that they had no doubt about his competency to plead. Parra acknowledged

4

that he understood his right not to plead, as well as the punishment he faced should he do so.

This Court determined that despite the assurances of defense and government counsel that Parra was competent to plead guilty – and that the district court had ruled, just a week earlier, that he was competent – because the district court had not inquired into what dosages of the medications were ingested, and what effects, if any, such medications might be likely to have on his clear-headedness, the Rule 11 colloquy was insufficient. It stated that "[t]he judge, though plainly making a substantial inquiry, did not probe deeply enough." Id. at 595-596. This Court in Parra-Ibanez cited the decision of the Third Circuit in United States v. Cole, 813 F.2d 43 (3rd Cir. 1987), which held that "[w]here significant evidence does come to the attention of the district court that defendant has recently taken drugs, the court has the obligation to inquire further before determining that a competency hearing is not necessary." 813 F.2d at 47.

In United States v. Savinon-Acosta, 232 F.3d 265 (1st Cir. 2000), this Court stated that:

> when the defendant at a Rule 11 proceeding confirms that he is taking medications, the district court has a duty to inquire into the defendant's capacity to enter a guilty plea. The better practice would be to identify which drugs a defendant is taking, how recently they have been taken and in what quantity, and (so far as possible) the purpose and consequences of the drugs in question. The critical question is whether the drugs – if they have a capacity to

> impair the defendant's ability to plead – have in fact done
> so on this occasion.
> 232 F.3d at 268 (citations omitted).

At the time that Mr. Caramadre tendered his plea, he stood before the district court as an individual with a 25 year history of severe mental illness, which was ongoing. His treating physicians diagnosed his condition as severe, refractory, treatment-resistant depression. He had been classified as disabled, and unable to practice law. He had submitted to the most extreme treatment options known to science, including transcranial magnetic stimulation,"[1] and was being considered for electroshock therapy. His attorneys were well aware of Mr. Caramadre's severe mental illness, but did not disclose this information to the court.

Mr. Caramadre argued below that the Rule 11 colloquy was constitutionally infirm because the district court did not comply with the dictates of Savinon-Acosta and Parra-Ibanez. The Court's entire colloquy, in relevant part, consisted of the following:

> **THE COURT:** Have either of you been treated recently for any mental illness or addiction to narcotic drugs?
> **CARAMADRE:** Your Honor, I have been treated for mental depression, both lately and for the last 20 years.
> **TRAINI:** Excuse me, your Honor, if I may. I have with me a list of Mr. Caramadre's medications so that we don't have to go through them.
> **THE COURT:** Sure. Could you just bring that up?

---

[1] Transcranial Magnetic Stimulation involves the use of a small electromagnetic coil, controlled by a computer program, which is used to deliver short, powerful bursts of magnetic energy focused precisely on the left side of the brain's frontal cortex. It is used for treatment of patients suffering from depression who have not achieved satisfactory improvement from prior antidepressant medications. See www.butler.org/tms/.

> **TRAINI:** The Government has seen this, your Honor.
> **THE COURT:** And we can just confirm, with respect to Mr. Caramadre, that you fully understand all the proceedings that are going on here, correct?
> **CARAMADRE:** That is correct, your Honor.
> **THE COURT:** And nothing in terms of these medications would have any effect on your ability to comprehend what's going on here?
> **CARAMADRE:** No, sir.
> **THE COURT:** And counsel can just confirm that, please.
> **TRAINI:** Yes, your Honor. That's correct.
> **THE COURT:** All right.
> APP-III, 5; 4 – 6; 2.

The panel decision acknowledged the applicable caselaw, but determined that despite this near total absence of what it requires, the plea somehow passed constitutional muster. It did so by relying on (1) Mr. Caramadre's assurances at the plea colloquy that he understood the proceedings; (2) that his attorneys vouched for this understanding; and (3) its determination that "the court's duty to delve into the specifics of a defendant's medications is relaxed to some degree where, as here, there are no 'other identifiable red flags in [the defendant's] performance at the hearing.'" United States v. Caramadre, ___ F.3d ___, 2015 U.S. App. LEXIS 21175 (1st Cir. December 7, 2015) at *12, quoting United States v. Kenney, 756 F.3d 36, 47 (1st Cir. 2014).

The panel decision's conclusion is remarkable in light of the obvious deficiency in the colloquy. The panel grudgingly acknowledged that:

> Caramadre had an impressive list of medications, along with a history of depression and anxiety. Given these facts,

> we think that the district court's handling of this issue was marginal at best. A deeper dive into the effects of the medications and Caramadre's psychiatric history may well have been warranted.
> Id. at *12.

This is understatement to the point of euphemism.[2] The district court's handling of the issue was hardly "marginal at best"; it was obviously ***non-existent***, and as a result, constitutionally defective.

Moreover, the panel's citation to Kenney is particularly inapt. As a threshold matter, the issue in Kenney was adjudicated pursuant to plain error standard of review, rendering its conclusions completely inapposite to this case. The Kenney decision relied heavily on the fact that "Kenney told the district court that he had never been treated for mental or psychological problems", and the district court "thus had little reason to suspect that the medications taken by the accused might impinge upon the accused's capacity to enter a voluntary and intelligent plea." Kenney, 756 F.3d at 47, n. 7, quoting Parra-Ibanez at 595. Here, Mr. Caramadre alerted the district court that he was currently being treated for mental illness, and had been for the past 20 years. Furthermore, the Kenney court noted that the district court "immediately followed the discussion of medications and surgery with a question that fairly encompassed Kenney's mental impairment," and

---

[2] Indeed, in its written opinion, the district court actually characterized its colloquy as "thorough and searching." See United States v. Caramadre, 957 F.Supp. 2d 160, 171 (D.R.I. 2013). Such an absurd characterization reveals the depth of the district court's antipathy to Mr. Caramadre's attempt to withdraw his plea, and lends strong support to his claim that the district court exhibited bias in its adjudication of the motion. See argument, *infra*.

"repeatedly questioned Kenney's understanding at each step of the hearing."

United States v. Caramadre, 2015 U.S. App. LEXIS 21175 at *12. No such

questions – nor any questions at all – were asked of Mr. Caramadre at his hearing.

In addition, the panel's determination that the district court's duty to "delve

into the specifics of Mr. Caramadre's medications" was "relaxed to some degree"

because "no identifiable red flags" existed at the hearing is nothing short of

astonishing. The district court here was advised of a 20-plus year history of major,

ongoing depression, which it completely ignored. In addition, the district court was

provided with the fact that ***Mr. Caramadre was taking 5 different medications for***

***depression and anxiety at the same time***, surely an uncommon, if not extremely

rare, circumstance. In light of these disclosures, one can only wonder what type of

obvious infirmity the panel would find necessary to constitute a "red flag."

Furthermore, the panel's reliance Mr. Caramadre's outward comportment,

and the assurances of his counsel, is, under the circumstances of this case,

completely unwarranted. In United States v. Hardimon, 700 F.3d 940 (7th Cir.

2012) the Court stated that:

> A judge is required to investigate the defendant's mental
> state if there are indications at the plea hearing or later of
> an impairment that made him incompetent to plead. The
> fact that the defendant seems competent when answering
> the judge's questions at the plea hearing should not be
> conclusive; mental diseases, or mental impairments
> brought on by psychotropic drugs, might alter the premises

of a person's thinking rather than the articulation of his
thoughts or his outward appearance or manner.
700 F.3d at 943.

In <u>United States v. Belle</u>, 1997 U.S. App. LEXIS 1513 (1st Cir. 1997), this

Court again relied on <u>Parra-Ibanez</u> to remand a case in order to determine the

effect of the defendant's medications on the validity of the plea. The colloquy in

<u>Belle</u> was almost identical to the district court's colloquy in this case:

> **THE COURT:** [1] Are you presently under a doctor's care?
> **BELLE:** Yes, your Honor.
> **THE COURT:** [2] What did she say?
> **CLERK:** Yes, your Honor.
> **THE COURT:** [3] Does the illness that you're being treated for affect your ability to understand the nature of these proceedings?
> **BELLE:** No.
> **THE COURT:** [4] Have you taken any medicine or pills or drugs today?
> **BELLE:** Yes, your Honor.
> **THE COURT:** [5] Is the ingestion of any of those items, medicines or pills or drugs, does it affect your ability to understand the nature of these proceedings?
> **BELLE:** No.
> **THE COURT:** [6] Have you ever been under psychiatric care?
> **BELLE:** No, your Honor.
> **THE COURT:** [7] Counsel, do you know any reason why the Court should not accept the plea of guilty?
> **MR. BALLIRO:** I do not, your Honor.
> **THE COURT:** [8] Have you had sufficient time to discuss this matter with your attorney?
> **BELLE:** Yes.
> **THE COURT:** [9] Are you satisfied with his representation of you?
> **BELLE:** Yes.

1997 U.S. App. LEXIS 1513 at *2-*3.

This Court rejected the contention that the assurances of both the defendant and her counsel supported the view that the colloquy was adequate. It stated:

> We cannot understand how, having been informed by the affirmative answer to question 4, that Belle may have just ingested drugs, the Court would not have asked the obvious. Her opinion, 5, and that of her counsel, 7, to the effect that some, unidentified, substance had not interfered with her mental abilities, was, at best, secondary evidence. It is not to be forgotten that defendant and counsel are concerned parties who want the plea accepted. Their views are important, and we certainly do not, at least initially, . . . question the good faith or general ability of counsel[3], but the purpose of a plea hearing is to obtain impartial findings upon available basic facts. We are not persuaded by a discomforted government's argument that these opinions excused the court 'from engaging Belle in an extended colloquy about her various ailments.' Rather, the Court's inquiry was conspicuously deficient.
> 1997 U.S. App. LEXIS at *4-*5.

This case presents a set of circumstances far more compelling than those which warranted remand in <u>Belle</u>; there, the defendant informed the court that she had never been under psychiatric care, while Mr. Caramadre specifically informed the court of a 20 year history of severe mental illness. The panel's attempt to

---

[3] Any reliance on the assurances of Mr. Caramadre's former attorneys is particularly inappropriate. The evidence at the withdrawal of plea hearing in the form of correspondence between his attorneys indicated that they were positively giddy at the prospect of Mr. Caramadre pleading guilty. Moreover, their testimony at the hearing, in which they went to extraordinary lengths to disparage their own client, was self-serving and arguably unethical. Moreover, they failed to inform the court of their knowledge of Mr. Caramadre's history of mental illness; stated on the record that they prepared a list of medications "so that we don't have to go through them"; and declined to inform the court of Mr. Caramadre's insistence that he would be lying to the court when he pleaded guilty. Furthermore, the lead attorney entered into a fee agreement to pay his "friend and mentor" attorney a $450,000 ***non-refundable*** fee. This agreement was not signed by Mr. Caramadre, who testified that he never authorized such a fee agreement. Any reliance at all in light of these obvious conflicts of interest is unwarranted.

11

justify the obviously constitutionally deficient Rule 11 colloquy in this case, on these grounds, is plainly erroneous.

The entry of a guilty plea is a "solemn act involving the waiver of several constitutional rights." <u>Miranda-Gonzalez v. United States</u>, 181 F.3d 164, 165 (1st Cir. 1999). Indeed, in this case Mr. Caramadre was waiving the most fundamental constitutional right: the right to a trial. All reasonable doubts must be resolved against waiver. Here, the panel decision unreasonably resolves real doubts ***in favor of waiver***. The circumstances of this case indisputably reveal that the plea colloquy was constitutionally infirm. This Court should therefore rehear this case *en banc*.

## II. THE PANEL ERRED IN RATIFYING FORMER COUNSEL'S DECISION TO ALLOW MR. CARAMADRE TO PLEAD WITHOUT INFORMING THE COURT OF HIS INSISTENCE THAT HE WOULD BE LYING TO THE COURT

Caramadre testified as to his "moral dilemma": that he would be lying to the district court when he admitted guilt to the criminal charges. In an email to former counsel, he asked "[W]hat about an Alfred plea. This would eliminate me needing to lie." Caramadre raised the issue again the night before he pleaded, when he asked his attorneys "how is it that I have to go plead guilty and agree to this statement of facts that is long-reaching when I deny it completely and don't believe I'm guilty of anything and all of these are lies and I'd be lying about it?" His attorneys did not bring this information to the attention of the court; rather, based

on their own belief that their client was guilty, they permitted the change of plea to proceed without informing the court of Mr. Caramadre's position.

Mr. Caramadre claimed that these circumstances constituted ineffective assistance of counsel, warranting withdrawal of the plea. The district court found no error based on two grounds: its belief that Mr. Caramadre's insistence that his plea would necessitate lying to the court was contrived pursuant to a preconceived plan to file a later motion to withdraw his plea, which the district court characterized as "'Plan-B – a way to get what he wanted from the start, which is a trial severed from [co-defendant] Radhakrishnan or, at the very least, to save face with his family, friends, community and church." 957 F.Supp. 2d 160, 184. It further ratified former counsel's nondisclosure on the ground that the former attorneys personally believed that Mr. Caramadre was guilty, and therefore had no duty to inform the district court.

The panel decision ratified the district court's treatment of the issue. Although the panel "[t]ook no view of the ["Plan B"] suggestion", it relied on former counsel's "vouchsafement" that they themselves believed Mr. Caramadre to be factually guilty, and their private conviction that his admission of guilt at the change-of-plea hearing was genuine.

The panel decision is unsupportable, and creates a dangerous precedent for future similar claims. By allowing the attorneys themselves to ignore the issue

13

based on their personal belief that their client is guilty, the panel decision permits defense counsel – especially those extremely desirous of a plea, like Mr. Caramadre's former attorneys – to permit prevarication and the perpetuation of fraud upon the court, without ever having the court even be aware of the issue.

When a defense attorney is confronted by a client who unequivocally informs him that he will be lying to the court when he pleads guilty, the attorney has three choices in response. He must either inform the client that he cannot go through with the plea under such circumstances; withdraw from representation of the client; or at the very least, inform the district court of this dilemma. Surely, one thing that he cannot do is ignore the situation, and later attempt to justify it on the grounds that he acted, in effect, as the jury in determining his own client's guilt. ***To follow the latter course surely constitutes ineffective assistance of counsel.*** Indeed, had Caramadre's attorneys informed the court of these circumstances, ***this entire litigation surrounding the attempt to withdraw the plea would have been avoided***.

This Court should grant rehearing *en banc* to address the panel's untenable resolution of this issue.

## III.    THE DISTRICT COURT ENGAGED IN VINDICTIVE SENTENCING

At sentencing, the district court stated that it increased Mr. Caramadre's sentence as a result of what it considered to be "obstruction and manipulation of

the judicial process in his attempt to withdraw his guilty plea." The district court was referencing what it had characterized as "Plan B"; that is, its belief that Mr. Caramadre pleaded in order to obtain the benefit of the plea agreement, while intending from the beginning to later seek to withdraw the plea as "'a way to get what he wanted from the start, which is a trial severed from [co-defendant] Radhakrishnan or, at the very least, to save face with his family, friends, community and church." 957 F.Supp. 2d 160, 184. See argument, *supra*. The district court stated:

> I'll be clear, it would have been lower but for the obstruction and the manipulation of the Court's process, closer to that so-called two-to-five-year range, but the added factor of the manipulation and obstruction has to count for some additional time. So as I said, six years, 72 months, is the incarcerative sentence.
> See APP-V, 427.

The panel decision did not reach the merits of this claim, holding that the "claim of vindictive sentencing is reminiscent of the bias claims that we already have rejected . . . and he has made no showing that this claim comes within the narrow confines of the miscarriage of justice exception." The panel noted that the six year sentence he received was less than the 10 year sentence he could have received, and was therefore not a miscarriage of justice. United States v. Caramadre, 2015 U.S. App. LEXIS 21175 at *39-*40.

15

At oral argument, however, the Government raised the spectre of the alleged "Plan B". The author the panel decision made it clear that the district court's speculation with respect to this alleged "Plan B" was not supported by any evidence:

> **THE COURT** (19:56): The difficulty in placing too much reliance on that factor is that, with all due respect, there's not much in the way of evidence to support it.
> **MR. LOCKHART** (20:03): Well, we fundamentally disagree with that, your Honor.
> **THE COURT** (20:07): What's the evidence to support it? There's evidence that there was a mistrial, but what's the evidence to support it?
> **MR. LOCKHART** (20:14): The evidence is that the defendant in a case called DeSimone.
> **THE COURT** (20:19): Yeah, that the Defendant was present during the DeSimone trial.
> **MR. LOCKHART** (20:24): No, no, you've got to be careful. That's right, the Defendant was present at the DeSimone trial, but he was presumably more aware of the DeSimone case more broadly, including the defendant's earlier withdraw of his guilty plea.
> **THE COURT** (20:36): But you say presumably. Right? There's no evidence of that.
> **MR. LOCKHART** (20:41): Well.
> **THE COURT** (20:42): The only evidence is that he was present during the DeSimone trial. And I think it's kind of a reach, and, frankly, one you don't need to make. Right. ***To say that, based on that, that this was some Machiavellian scheme.***
> **MR. LOCKHART** (21:03): Well, the Court disagrees with our position on that point.
> Recording of 10/6/15 Oral Argument (emphasis added).

The district court made it abundantly clear that it was increasing Mr. Caramadre's sentence from two-five years, to six years, solely as a result of what it

considered to be the nefarious "Plan B." Given the panel's recognition that there was no evidence to support this rank speculation, permitting the district court to increase his sentence on that basis must surely constitute a miscarriage of justice. At the very least, the case should have been remanded for the district court to correct this manifest injustice. This Court should therefore grant rehearing *en banc*.

## IV.    THE PANEL DECISION MISCONTRUES THE RULE 10(c) ARGUMENT

Mr. Caramadre claimed that the district court exhibited bias and prejudged the motion to withdraw his guilty plea. He sought to support this argument by referencing statements made by the district court at an unrecorded, untranscribed chambers conference. He filed a motion pursuant to Federal Rule of Appellate Procedure 10 (c) to reconstruct the record, including certain statements made by the district court and contemporaneously recorded by counsel, which supported his argument, confirmed the district court's prejudgment of a major portion of his claim, and whose accuracy was tacitly conceded by both the Government and the district court.

The district court refused to include its uncontroverted statements in the reconstructed record, instead providing a wide-ranging "explanation" of the purported reasons for making the statements. The gravamen of Mr. Caramadre's complaint was not that the district court could not provide its own statement of its recollection; rather, that it could not do so while refusing to include the actual

17

statements it made, the accuracy of which the Government could not and did not challenge, and which the district court admitted were accurate. As a result, Mr. Caramadre was precluded from referencing the statements in support of his bias claim. The panel decision completely misapprehended Mr. Caramadre's argument, focusing solely on whether the district court was entitled to submit its own version of events.

At the chambers conference, undersigned counsel advised the district court that one reason for the motion to withdraw the plea was the exacerbation of Mr. Caramadre's own depression as a result of the emotional breakdown of his wife after the second day of trial. The district court's response was that Mr. Caramadre "did not plead because of his wife's breakdown; he pleaded because he was getting killed at trial." The district court's rejection of a main contention of Mr. Caramadre's motion prior to hearing any evidence in support of the claim is clear proof of prejudgment. The panel decision's misapprehension of the 10 (c) issue permits the district court to insulate itself from consideration of this issue, by precluding from the reconstructed record statements which all parties know full well were made. This Court should rehear this case *en banc* to correct this egregious error.

## V.    MR. CARAMADRE'S CLAIM THAT THE DISTRICT COURT ERRED IN ORDERING RESTITUTION IN THE AMOUNT OF $46,000,000 IS NOT BARRED BY THE APPEAL WAIVER

In concluding that Mr. Caramadre's restitution claims were waived, the panel cited this Court's decision in United States v. Okoye, 731 F.3d 46 (1st Cir. 2013), and opined that Mr. Caramadre's case and Okoye were "on all fours". United States v. Caramadre, 2015 U.S. App. LEXIS at *37. In a footnote, the panel acknowledged that this Court has "declined to hold that an appeal waiver that omits any mention of restitution necessarily applies to restitution orders". Id. at *38, n. 10 citing United States v. Sanchez-Maldonado, 737 F.3d 826, 827-828 (1st Cir. 2013). It then stated, however, without citation to any supporting caselaw, that "a court may conclude, based on a holistic view of such a plea agreement and the attendant circumstances, that a particular waiver-of-appeal provision was meant to extend to restitution orders." Id.

In making its decision, the panel decision completely sidesteps this Court's precedential decision in Sanchez-Maldonado, where this Court acknowledged that "no consensus exists as to whether a waiver-of-appeal provision that explicitly applies to a sentence but omits any mention of restitution extends to orders for restitution. . . ." 737 F.3d 827-828. See also United States v. Salas-Fernandez, 620 F.3d 45, 47 (1st Cir. 2010) ("this Court has not opined on whether such a waiver precludes an appeal of an order for restitution"). Here, the waiver-of-appeal

provision contained in Mr. Caramadre's plea agreement makes no mention to restitution, only to the "convictions and sentences imposed by this Court." Once again, the panel decision presumes waiver of a constitutional right, and erroneously resolves legitimate doubts in favor of waiver. The panel decision's misplaced reliance on <u>Okoye,</u> and attempt to elude this Court's precedential decision in <u>Sanchez-Maldonado</u>, which more closely applies to Mr. Caramadre's waiver-of-appeal, requires rehearing *en banc*.

## CONCLUSION

For the foregoing reasons, this petition for rehearing and for rehearing *en banc* should be granted. Appellant respectfully requests the opportunity to file a supplemental brief in the event that this petition is granted.

Respectfully Submitted,
Joseph Caramadre,
By his attorneys,

/s/ Randy Olen          /s/ Robert F. Weber
_____          _____
Randy Olen, Esq.          Robert F. Weber, Esq.
478A Broadway, Providence, RI 02909
Phone: (401) 274-1400 – Fax: (401) 274-2480

## CERTIFICATION

I hereby certify that on this 4th day of January, 2016, I caused to be delivered, via electronic delivery, a true copy of the within ***Petition for Rehearing and for Rehearing en banc*** to Donald C. Lockhart, Esq., U.S. Attorney's Office, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903.          /s/ Randy Olen
                                                            _____